# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ORLANDO STANFORD,      )
                                        )

           Plaintiff,       )          Civil Action No. 16-1584
                                      )          Magistrate Judge Maureen P. Kelly

              v.          )

JOHN WALTON, ERIC SCHWARTZ,   )         Re: ECF Nos. 161 and 163
STEVEN CMAR, BRAD TOMASELLO,  )
GEORGE LOWTHER, DAWN         )
BICKERTON, AMY WIDMAR,       )
WESTMORELAND COUNTY PRISON, and  )
WESTMORELAND COUNTY PRISON    )
BOARD,                           )
                                          )

          Defendants.     )

## OPINION AND ORDER

**KELLY, Magistrate Judge**

Plaintiff Orlando Stanford ("Plaintiff"), who is currently incarcerated at State Correctional Institution at Houtzdale ("SCI-Houtzdale"), brings this *pro se* civil rights action arising out of alleged violations of his constitutional rights during his incarceration in the Restricted Housing Unit at the Westmoreland County Prison in September 2016.

Presently before the Court are two Motions for Summary Judgment filed on behalf of Defendants. ECF Nos. 161, 163. For the reasons that follow, the Motions for Summary Judgment will be granted.[1]

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF Nos. 180 and 181.

## I.    FACTUAL BACKGROUND

Plaintiff's claims arise out of twenty-nine days during which he was incarcerated in the Restricted Housing Unit ("RHU") at Westmoreland County Prison. In his Complaint, Plaintiff alleges that Defendants violated his Fifth, Eighth, and Fourteenth Amendment rights through the conditions of his confinement in the RHU, where he was denied access to showers, recreation, and clean linens from between 8 and 20 days, and subjected to constant illumination and isolation. Plaintiff claims that, as a result of these conditions, he developed a fungal toenail infection; deterioration of his mental health; decreased vision, cluster headaches, digestion problems, and irregular heartbeat. ECF No. 176 ¶ 18, 29; ECF No. 176-1 ¶ 31.

In addition, Plaintiff claims that Defendants violated his Eighth and Fourteenth Amendment rights by denying him medical treatment with respect to a purported toenail infection and mental healthcare in the RHU. Finally, he asserts violations of his First, Sixth, and Fourteenth Amendment rights as a result of Defendants' purported failure to provide him with legal materials necessary to prepare his criminal defense, and by hindering his ability to pursue his administrative remedies within the prison.

The Defendants remaining in the case at this stage in the litigation are Westmoreland County Prison and the Westmoreland County Prison Board (the "Prison Board"), and prison officials John Walton ("Walton"), Eric Schwartz ("Schwartz"), Steven Cmar ("Cmar"), Brad Tomasello ("Tomasello") and George Lowther ("Lowther"). Walton is the Warden of Westmoreland County Prison.

2

## A. The RHU

Plaintiff was confined at the Westmoreland County Prison from September 2, 2016 to October 27, 2016, and he was placed in the RHU on September 6, 2016 for a rule infraction. ECF No. 185 ¶¶ 1, 3. He was released from the RHU on October 5, 2016. Id. ¶ 5; ECF No. 185-1 at 6.

Plaintiff relies on an affidavit he prepared in opposition to Defendants' Motions for Summary Judgment. [2] ECF No. 176-1. In his affidavit, Plaintiff asserts that, while in the RHU, he was not given a recreation hour from September 6, 2016 to September 21, 2016. ECF No. 176-1 ¶ 3. He was not provided access to a shower from September 8, 2016 to September 16, 2016. Id. He also claims that he was not given clean linens or a clean uniform from September 6, 2016 to September 26, 2016. Id. Plaintiff's cellmate, Christopher Smarr ("Smarr"), attests in an affidavit that he witnessed a corrections officer tell Plaintiff that "he now has a set schedule and denied [Plaintiff] a shower or recreation." ECF No. 175-20 at 2.

Although Plaintiff claims he was kept in solitary confinement, the record before the Court is silent as to whether, and for how long, this occurred. Smarr claims that he was Plaintiff's cellmate in the E-Unit. Defendants state that Plaintiff was transferred to E-Unit on September 19, 2016 and remained until October 5, 2016, when he was released from the RHU and transferred to A-Unit. ECF No. 175-12 at 18; ECF No. 175-13 at 2. Additionally, Plaintiff claims he was exposed to "24-hour lighting" and constant illumination, but he does not proffer any evidence regarding the brightness, location, or other details regarding the light. ECF No. 176 ¶ 29.

---

[2] Consistent with other filings Plaintiff has submitted in this case, Plaintiff's affidavit appears to be signed by printing his name.

## B. Plaintiff's Medical Complaints

### 1. Toenail infection

During his confinement in the RHU, Plaintiff claims that he requested treatment for what he claimed to be a toenail infection. ECF No. 175-8; ECF No. 176-1 ¶ 18. On September 26, 2016, Dawn Bickerton ("Bickerton"), a physician assistant employed by Wexford Health at the Westmoreland County Prison, evaluated Plaintiff's symptoms. ECF No. 185-1 at 10; ECF No. 185 ¶ 13. According to Bickerton's notes of her evaluation, Plaintiff self-diagnosed a soft-tissue infection in his "right great toe." ECF No. 185-1 at 10. Bickerton examined both of Plaintiff's feet and determined there was: "older ecchy under nail and at base of the nail. [V]ery minimal swelling at the base of the toenail. [N]o warmth. [N]o redness. [N]o swelling of toe. [N]o open areas." Id. She concluded there was no evidence of infection and that no treatment was required. Id.

Just eight days later, former Defendant Amy Widmar ("Widmar"), Health Services Administrator, evaluated Plaintiff again on October 4, 2016 at the Westmoreland County Prison. ECF No. 59 ¶¶ 33-35. Plaintiff claims that there is no record of this examination, and that Widmar refused to look at his toe, simply deferring to Bickerton's conclusions. ECF No. 59 ¶¶ 33-35; ECF No. 176 ¶ 26. However, in response to Plaintiff's prior Motion for Preliminary Injunction in this action, Widmar filed the following notes of her October 4, 2016 examination of Plaintiff:

> [E]xamined inmates big toe on left foot due to repeated complaints of "soft tissue infection". Inmate had been examined several times previous to this occasion both by PA and nurse. Todays exam noted no puss, no swelling, no redness, no evidence of infection. Inmate insistent on receiving antibiotics, this is denied as there is no medical indication for antibiotics. Inmate instructed to keep area clean with soap and water, and dry. Inmate instructed to notify medical if any NEW symptoms of "infection" present.

ECF No. 98-1 at 6.

4

After Plaintiff was transferred to the State Correctional Institution at Greene ("SCI-Greene"), on November 5, 2016, Plaintiff's toe was evaluated by Nurse Dice ("Dice"). ECF No. 175-18 at 2. According to the medical records, Plaintiff was evaluated in connection with his left great toe. Dice's notes indicate that Plaintiff's toenail was loose at the cuticle, discolored and brownish. Id. Dice concluded that there was no infection noted, but referred Plaintiff to "sick call" to be evaluated by a doctor or physician assistant. Id.

Two days later, on November 7, 2019, medical records indicate that Plaintiff was evaluated in connection with reported "left great toenail pain" and Plaintiff's request to review his medication. ECF No. 175-18 at 3. According to notes from this visit, Plaintiff's left great toenail was thick, discolored, slightly loose, and "suggestive of onychomychosis" (a fungal infection of the nail). Id. Plaintiff's "transfer health information" sheet dated November 21, 2016 also indicates that Plaintiff was diagnosed with the fungal infection Tinea Unguium. ECF No. 175-18 at 4. The medical records do not indicate the source or cause of Plaintiff's symptoms.

### 2. Mental health

As of July 6, 2016, prior to his placement in the RHU, records indicate that Plaintiff had been diagnosed with "other specified schizophrenia spectrum and other psychotic disorder" and "adjustment order with anxiety." ECF No. 175-5. As of August 31, 2016, a Department of Corrections ("DOC") temporary transfer record characterizes Plaintiff as "seriously mentally ill." ECF No. 175-15.

Plaintiff received ongoing treatment from mental health professionals while incarcerated, ECF No. 175-14 and ECF No. 175-5, and he was prescribed medication for treatment of his condition. ECF No. 175-18 at 4; ECF No. 175-5. Plaintiff continued to receive medication for his

5

psychiatric condition while housed in the RHU at Westmoreland County Prison.  ECF No. 59 at 4; ECF No. 185-2 at 14.

Plaintiff states in his affidavit that, due to the incident alleged, his "mental symptoms worsened" and became more intense.  ECF No. 176-1 ¶ 31.  Plaintiff has not produced any other supporting evidence, medical records or expert opinion documenting a change in his mental health symptoms or opining as to either the cause or treatment of any purported symptoms.

### 3.  Other medical complaints

Plaintiff asserts in his Concise Statement of Material Facts that his "eyesight decreased due to being under constant 24 hour lighting" and this also caused Plaintiff's migraines to progress to cluster headaches, digestion problems and irregular heartbeat.  ECF No. 176 ¶ 29.  In support of this statement, Plaintiff produces various medical records.

With respect to Plaintiff's headaches, Plaintiff relies on a medical report dated August 17, 2017, nearly a year after his incarceration in the RHU at Westmoreland County Prison, indicating that Plaintiff had been experiencing headaches almost every day for the past month, which included light and sound sensitivity, and pressure in the temporal region.  The report concludes that his headache is most likely a "cluster" headache.  ECF No. 175-19 at 7.  There is no indication as to a specific cause of the headaches.

With respect to his eyesight, Plaintiff produces a medical report dated May 4, 2018, which indicates that "inmate was seen 3 years ago glasses were ordered then he was released, that occurred in 2015."  Id. at 2.  Plaintiff was referred to optometry.  Id.  There is no indication of any decreased eyesight following Plaintiff's confinement in the RHU at Westmoreland County Prison in 2016.  There is no indication as to a specific cause of any vision problems.

6

With respect to his digestion, Plaintiff introduces medical reports dated March 2017, six months after his incarceration in the RHU at Westmoreland County Prison, indicating that Plaintiff was experiencing constipation, nausea, dry heaving and abdominal pain. Id. at 2-4. The records indicate that the was treated for these symptoms and his condition improved. Id. There is no indication as to a specific cause of these symptoms.

Finally, with respect to his heart, Plaintiff relies on a medical testing report dated March 13, 2018, more than a year after his incarceration in the RHU at the Westmoreland County Prison, indicating that Plaintiff has "normal sinus rhythm" and "early repolarization." Id. at 6. There is no indication of the cause or effect of the early repolarization diagnosis.

### 4. Plaintiff's requests for medical treatment

Plaintiff claims that he attempted to receive treatment for a purported toenail infection while in the RHU, but was not seen until September 26, 2016. According to the Westmoreland County Prison Handbook (the "Prison Handbook"), produced and relied upon here by Plaintiff, the following notification procedure is required to obtain medical services:

> To receive medical services, you must fill out an inmate request slip, outlining your problem and place it in the **medical request slip box** on the unit. <u>Do not</u> turn it over to a unit officer, and do not place it in any other request slip box other than the designated "medical request slip box."

ECF No. 175-3 (emphasis in original).

For "sick calls," the Prison Handbook indicates as follows:

> You are to submit a written request to the medical staff, if you wish additional medical care. You are to place this request in the designated "medical request slip box", not in the ***regular*** inmate request slip box. You are to indicate your name, booking number, and medical complaint on the request slip.

> If you are having a medical emergency that cannot wait for the next scheduled physician's visit, have the **housing unit officer contact his/her immediate supervisor,** who in turn will contact the medical staff. Do not attempt to have a nurse examine you during "medication distribution periods."

Id. (emphasis in original).

Plaintiff verified that he received a copy of the Prison Handbook on at least three occasions prior to entering the RHU: May 24, 2016, July 15, 2016 and September 3, 2016. ECF No. 185-1 at 12-14.

In an affidavit, Plaintiff claims that, in an effort to receive treatment for his toenail, he informed corrections officers as they passed by, and he informed a nurse of his request while she was passing out medications. ECF No. 176-1 ¶¶ 18, 19. Plaintiff also asserts that he "wrote several requests for medical treatment to no avail" over the course of several weeks. Id. ¶ 20. Plaintiff indicates that he did not receive medical attention until September 26, 2016, after informing prison officials at his board hearing of "his denial of medical treatment for his infection," after which Defendant Lowther directed that he "be seen." Id. ¶ 21; ECF No. 176 ¶ 22. The hearing record reflects that Defendant Schwartz was present at this hearing, in addition to board members Floyd E. Murphy and Shane K. Smith. ECF No. 175-7.

With the exception of these board members, who are identified in the records provided, the record does not specifically identify which individuals Plaintiff attempted to inform of his need for medical treatment, or where or to whom he directed the written requests. The parties produced one written request slip related to Plaintiff's toenail condition, which is directed to the medical department. This request slip is dated Friday, September 23, 2016, and it states:

> I keep writing & requesting to have my foot checked for that soft tissue infection[.]
> Can you call me down?

ECF No. 175-8.

In response to the request slip, Plaintiff was evaluated by Bickerton the next business day, on September 26, 2016. ECF No. 185-1 at 10. According to Bickerton's notes, Plaintiff informed

her that his toenail condition had been present for 2-3 weeks and that he had not been provided medical attention for it, "but also admits to never dropping a slip about it to medical until now." Id.

The record does not reflect that Plaintiff ever reported, or requested treatment in connection with, any symptoms involving decreased vision, headaches, digestion problems, or his heart between September 6, 2016 and October 5, 2016 while he was in the RHU.

### 5. Plaintiff's requests for mental health treatment

The Prison Handbook identifies the following procedure for requesting mental health treatment:

> Mental Health Treatment is also available to assist you, if you require such treatment. You can submit a written request slip directly to the Mental Health Professional in the Medical Department or contact the Deputy Warden of Treatment.

ECF No. 175-3.

With respect to requests for mental health treatment, Plaintiff claims in his affidavit that he requested psychiatric medical attention while in the RHU, but was never seen. Plaintiff claims that he wrote a request to see a "psych doctor" but did not receive a response. ECF No. 176-1 ¶ 8. There is no written record provided of this request, and Plaintiff does not specify where, when, or to whom it was directed. Plaintiff also claims that he asked a nurse dispensing his medication if he could see the psych doctor, and he was told that the doctor was out on vacation. Id. at ¶ 9. Defendants dispute that Plaintiff ever requested mental health treatment while in the RHU. ECF No. 185 ¶ 8.

### 6. Plaintiff's requests related to the conditions of his confinement

Plaintiff asserts in his affidavit that, on September 8, 2016, he informed the board members at his hearing that he was "not being given showers, or recreation." ECF No. 176-1 ¶ 2. According

to the hearing report, Defendants Schwartz and Tomasello and Corrections Officer Shane K. Smith were present at this hearing. ECF No. 175-6.

Plaintiff also states that he wrote to Walton "informing him of Plaintiff's treatment and conditions of confinement." ECF No. 176 ¶ 14. There is no indication when this communication occurred or the specifics of what Plaintiff relayed.

Plaintiff states that he "continuously and effortlessly requested passing [corrections officers] for a shower and recreation to no avail." ECF No. 176 ¶ 17; ECF No. 176-1 at 12. Plaintiff claims that he continuously pushed his call button and no one ever responded. ECF No. 176 ¶ 19.

### 7. Grievances

Plaintiff was aware of the process for filing a grievance at Westmoreland County Prison. ECF No. 185-1 at 12-14. There is no dispute that he did not submit a grievance form in connection with the claims at issue in this case.

Plaintiff claims that he made efforts to obtain a grievance form, but was unable to do so. In his affidavit, Plaintiff indicates that he requested a grievance form from Corrections Officer Suddy and was told "there is none." ECF No. 176-1 ¶ 7. After Bickerton examined Plaintiff, he claims that he wrote a request to Defendant Cmar indicating that he was being denied treatment. Plaintiff requested a grievance form and further evaluation from Cmar. Id. ¶ 23. Defendant Lowther then directed that Plaintiff be seen again by the medical professionals. Id. ¶ 24; ECF No. 176 ¶ 23.

On September 30, 2016, Plaintiff requested an "emergency grievance from Murphy," who refused to provide a grievance form on the grounds that it was not a "life or death situation." ECF No. 176-1 ¶ 25.

Defendants Schwartz, Tomasello and Walton admit that "per prison policy grievances are not made available on any housing unit." ECF No. 175-12 at 22, 24, 25, 26, 29-31; ECF 176 at ¶ 4.

## II.    PROCEDURAL HISTORY

Plaintiff filed his initial Complaint on October 20, 2016.  ECF No. 3.  On October 27, 2016, this Court filed a Report and Recommendation, recommending that the Complaint be dismissed for failure to state a claim upon which relief could be granted.  ECF No. 6.  On December 8, 2016, Plaintiff filed objections to the Report and Recommendation.  ECF No. 18.  United States District Judge Mark R. Hornak entered a Memorandum Order on December 19, 2016 finding that, although the allegations in Plaintiff's Complaint failed to state a claim, additional factual allegations in Plaintiff's Objections may state a claim.  ECF No. 19.  Plaintiff was therefore ordered to file an amended complaint, ECF No. 19.

Plaintiff submitted an Amended Complaint on January 18, 2017.  ECF No. 22.  Following Defendants' filing of a Motion to Dismiss the Amended Complaint, ECF No. 42, Plaintiff filed the operative Second Amended Complaint on June 12, 2017.  ECF No. 59.

In his Second Amended Complaint, Plaintiff brings four unnumbered claims.  The Court has identified them by number for ease of reference.  Count I, brought against Defendants Walton, Tomasello, Schwartz, and the Prison Board, is a claim related to the conditions of Plaintiff's confinement.  Id. at 3.  Count II, brought against Defendants Walton, Westmoreland County Prison, Bickerton and Widmar, is a claim for deliberate indifference to a serious medical need.  Id. at 4.  Count III, brought against Defendants Walton and Westmoreland County Prison, is a claim for deliberate indifference to psychological needs.  Id.  Count IV, brought against Defendants

11

Westmoreland County Prison, Westmoreland County Prison Board, Cmar, Walton, and Lowther is a claim for denial of due process and access to the courts. Id. at 5.

Defendants filed three Motions to Dismiss the Second Amended Complaint. ECF Nos. 61, 78, and 86. Thereafter, the Court issued a Report and Recommendation recommending that the Motion to Dismiss filed by Medical Defendants Widmar and Bickerton, ECF No. 86, be granted. ECF No. 111. As to the remaining Defendants, the Court recommended that the Motions to Dismiss, ECF Nos. 61 and 78, be denied. On February 26, 2018, District Judge Mark Hornak adopted the Report and Recommendation. ECF No. 114.

Following the close of discovery, ECF No. 145, Defendants submitted the instant Motion for Summary Judgment, along with a Brief in Support, in which they argue that Plaintiff's claims should be dismissed for failure to exhaust Plaintiff's administrative remedies, and because there is no genuine issue of material fact with respect to the claims against them. ECF Nos. 161, 162. In addition, Defendants Westmoreland County Prison and the Prison Board filed a separate Motion for Summary Judgment and Brief in Support, arguing that dismissal is also proper because the Westmoreland County Prison is a building and the Prison Board is "nothing more than a group of elected officials who set policy for the prison." ECF Nos. 163, 164 at 2. As such, they are not "persons" who can be sued under 28 U.S.C. § 1983. ECF No. 164 at 2.

On May 13, 2019, Plaintiff submitted a Brief in Opposition to Defendants' Motions for Summary Judgment and a concise statement of material facts, with supporting appendix. ECF Nos. 175-177.

On July 24, 2019, the Court ordered Defendants to supplement their Motions for Summary Judgment with a concise statement of material facts, as required under Local Civil Rule 56(B). ECF No. 182. Defendants subsequently submitted a concise statement of material facts on August

12

5, 2019, ECF No. 185, and Plaintiff submitted a counterstatement of material facts to Defendants' filing on August 23, 2019, ECF No. 187.[3] As such, the Motions for Summary Judgment are now ripe for review.

## III.    STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof"). Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion . . . a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex, 477 U.S. at 322; Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead

---

[3] Plaintiff previously submitted a "responsive statement of material facts" to certain statements set forth in Defendants' Motion for Summary Judgment. ECF No. 175. The statements to which Plaintiff responded were not identified in Defendants' filing as a concise statement of material facts and did not comply with Local Civil Rule 56(B).

a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Matreale v. N.J. Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

## IV.    DISCUSSION

### A.    Failure to Exhaust Administrative Remedies

Defendants argue that Plaintiff's claims should be dismissed because Plaintiff failed to exhaust his administrative remedies, as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense, which defendant must prove. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

As the United States Court of Appeals for the Third Circuit has explained:

> The PLRA requires inmates to exhaust prison grievance procedures before suing in court. 42 U.S.C. § 1997e(a). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." Jones [v. Bock], 549 U.S. [199] at 218 [2007] (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)).
>
> In Brown v. Croak, we noted that the PLRA requires exhaustion of "available" administrative remedies and defined such remedies as those that are "capable of use; at hand." 312 F.3d 109, 113 (3d Cir. 2002) (internal quotation marks omitted)

14

(quoting *Webster's II, New Riverside University Dictionary* 141 (1994 ed.)). Accordingly, we held that when prison officials "thwart[] [a prisoner's] efforts to exhaust his administrative remedies," they render them "unavailable." Id.

Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 153 (3d Cir. 2016).

In their Motion for Summary Judgment, Defendants argue that Plaintiff had notice of, and has acknowledged, the requirements for submitting a grievance at the Westmoreland County Prison. Because there is no dispute that Plaintiff did not submit a grievance regarding the claims at issue here, they argue that his claims should be dismissed. Plaintiff responds that he was unable to exhaust his administrative remedies because grievance forms were not made available to him, despite his repeated efforts, and because he was not required to follow protocol in an "emergency" situation. Plaintiff also relies on Defendants' admissions in discovery responses that "grievance forms were not made available on any housing unit" in support of his argument.

Based on the record, Defendants have not satisfied their burden to prove that Plaintiff failed to exhaust his administrative remedies. Although Defendants argue that Plaintiff failed to submit a grievance form, Plaintiff is only required to exhaust such remedies "as are available" to him. 42 U.S.C. § 1997e(a); see also Robinson, 831 F.3d at 153. Here, Defendants admit that grievance forms were "not made available on any housing unit." They do not attempt to address or refute the facts set forth in Plaintiff's affidavit claiming that grievance forms were made unavailable to him. Accordingly, Defendants have not established that Plaintiff failed to exhaust his administrative remedies. The Court therefore addresses the merits of Plaintiff's claims below.

### B. Claims Against Westmoreland County Prison and the Prison Board

Plaintiff asserts his claims pursuant to 42 U.S.C. § 1983. In order to succeed on a Section 1983 claim, a plaintiff must show: (1) the conduct complained of was performed by a person acting under color of state law; and (2) this conduct deprived the claimant of rights, privileges, or

immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

In their Motion for Summary Judgment, Defendants Westmoreland County Prison and the Prison Board argue they should be dismissed because, as departments of Westmoreland County, they have no legal identity separate from Westmoreland County and are therefore not "persons" under Section 1983. ECF No. 163. The Court agrees that the Westmoreland County Prison is not a "person" subject to suit because the Westmoreland County Prison is, in fact, simply a building. Accordingly, the prison must be dismissed. See Mincy v. Deparlos, No. 1:08-cv-0507, 2011 WL 1120295, at *7 (M.D. Pa. March 24, 2011) ("[A] prison or correctional facility is not a 'person' within the meaning of § 1983"), aff'd 497 F. App'x 234, 239 n. 5 (3d Cir. 2012).

With respect to the Prison Board, as this Court has acknowledged: "[t]here is a split of authority within the district courts in this Circuit as to whether or not a prison board is a separate corporate entity from a county such that it does not have the capacity to be sued as a 'person' under Section 1983." Langella v. Cty. of McKean, No. 09-cv-311E, 2010 WL 3824222, at *4 (W.D. Pa. Sept. 23, 2010) (citing Goodine v. Lackawanna Cty. Sheriff, No. 4:08-cv-01898, 2010 WL 830956, at *5 (M.D. Pa. 2010) (citing cases and ultimately holding that "[a] county prison board is a local government unit and a 'person' amenable to suit under § 1983")); D.S. v. Hollidaysburg/Blair Cty, No. 3:18-140, 2018 WL 6590367, at *3 (W.D. Pa. Nov. 26, 2018). The Court notes that the parties have not provided evidence regarding the role or constitution of the Prison Board.

Even if the Court were to find that the Prison Board is a proper defendant in this case, however, dismissal is appropriate. It is well-established that, as a local government unit, the Prison Board is not responsible for the acts of those it supervises under a theory of vicarious liability or

*respondeat superior*. Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690 (1978). Rather, Plaintiff must establish that there was a relevant Prison Board "policy or custom, and that the policy caused the constitutional violation [he] allege[s]." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003); see also Meyers v. Schuylkill Prison, No. 4:CV-04-1123, 2006 WL 559467, at *9 (M.D. Pa. March 7, 2006). "A policy is made 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" Natale, 318 F.3d at 575 (quoting Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996)). "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" Id. (quoting Bryan Cty v. Brown, 520 U.S. 397, 404 (1997)).

Plaintiff fails to support any such claim against the Prison Board in this case.[4] Here, Plaintiff claims that the Prison Board is liable in connection with his conditions of confinement claim (Count I) and access to courts claim (Count IV).

With respect to Count I, Plaintiff does not allege that his harm was *caused* by the enforcement of policy or practice, but rather by Defendants' failure to adhere to prison policy in his particular case. As Plaintiff alleges in his Complaint, he was denied "recreation, showers and same treatment as others housed in the (RHU)." ECF No. 59 at 3. Plaintiff does not plead facts in his Complaint, or offer any evidence here, that the Prison Board created any custom or policy that caused his alleged harm.

With respect to Count IV, Plaintiff asserts that "prison policy" prevented him from accessing legal materials in a timely manner while housed in the RHU. Even assuming that the

---

[4] At times, the parties refer to Plaintiff's hearings before a "board" with respect to his confinement in the RHU. There is no indication that this disciplinary or review board is the same entity as the Westmoreland County Prison Board sued herein.

17

Prison Board created this alleged policy, as discussed below, it did not result in any constitutional violation. Accordingly, Plaintiff's claims against the Westmoreland County Prison and the Prison Board are dismissed.

### C. Deliberate Indifference Claims (Counts II and III)

Plaintiff brings two claims that Defendants violated his Eighth Amendment rights[5] by deliberate indifference to serious medical needs. First, Plaintiff claims that Defendant Walton, Warden of the Westmoreland County Prison, denied Plaintiff medical treatment with respect to an alleged toenail infection (Count II). Second, Plaintiff claims that Walton also denied him psychological care (Count III).[6]

A refusal to provide medical care to a prisoner violates the Eighth Amendment's prohibition of "cruel and unusual punishment." U.S. Const. amend. VIII. In order to establish such a violation, Plaintiff must prove (1) a serious medical need; and (2) deliberate indifference on the part of the prison officials to that serious medical need. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). For the reasons discussed below, the Court concludes that Plaintiff fails to satisfy this burden of proof, and therefore grants summary judgment with respect to Counts II and III.

### 1. Denial of medical care (Count II)

With respect to Count II, Defendants argue that the entry of summary judgment is warranted because Plaintiff's purported toenail infection is not a "serious medical need" and Plaintiff has not presented evidence to establish that Defendants were aware of facts to create any

---

[5] Although Plaintiff asserts his claim under the Eighth and Fourteenth Amendments, ECF No. 59, he limits his argument in Opposition to Defendants' Motion for Summary Judgment to claims under the Eighth Amendment.

[6] Plaintiff sued Westmoreland County Prison in connection with Counts II and III but, for the reasons discussed *supra* Section III(B), summary judgment is granted in favor of Westmoreland County Prison. Plaintiff also sued two medical care providers with respect to Count II, but the Court previously dismissed those defendants. ECF No. 114.

inference that a substantial risk of harm existed for Plaintiff. ECF No. 162 at 5-6. In opposition, Plaintiff relies on medical records suggesting that he later was diagnosed with, and treated for, a toenail fungal infection at SCI-Greene. ECF No. 177 at 19. He further claims that Defendants were aware of his need for treatment, because he "made Defendant personally aware that he was being denied any form of treatment" and Defendants "directed Plaintiff to be seen [by medical staff] not once but twice still aware that Plaintiff was being denied any form of treatment." Id. at 20.

The Court agrees with Defendants that, with respect to the first prong, the record does not establish that Plaintiff suffered from a "serious medical need" while in custody at the RHU. A medical need is considered "serious" if it "has been diagnosed by a physician as requiring treatment," or is "so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty. Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F. Supp 456, 458 (D.N.J.1979), aff'd, 649 F.2d 860 (3d Cir. 1981)); see also Palakovic v. Wetzel, 854 F.3d 209, 227 n. 23 (3d Cir. 2017).

Based on the medical records provided, Plaintiff's toenail condition was evaluated by medical providers and determined not to require treatment while he was housed in the RHU at Westmoreland County Prison. The records reflect that Bickerton and Widmar evaluated both of Plaintiff's feet, and neither diagnosed him with any condition that required treatment. Although Plaintiff relies on records suggesting he later was diagnosed with a fungal toenail infection at SCI-Greene, these records relate to treatment that was provided over a month later. Thus, even assuming a fungal toenail infection may be a serious medical need, the record does not establish that Plaintiff suffered from a toenail infection while in the RHU at Westmoreland County Prison.

As to the second prong, Plaintiff fails to establish that Walton acted with deliberate indifference to a serious medical need. The United States Supreme Court has held that "deliberate indifference" occurs when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Walton, the Warden at Westmoreland County Prison, is the only remaining Defendant sued in connection with this claim. Plaintiff offers no evidence to suggest that Walton was aware of Plaintiff's toenail condition during the relevant time period, let alone that he was deliberately indifferent to Plaintiff's medical needs. Although Plaintiff alleges that, at some point, he wrote a letter to Walton regarding his "conditions of confinement," there is no proffered evidence that Plaintiff (or others) informed Walton of Plaintiff's alleged toenail condition or requests for medical treatment, or that Walton would have reason to become aware of Plaintiff's toenail condition through other means.

To the extent Plaintiff argues that he informed "Defendant" of his need for medical attention, and that Defendants directed that he be seen, there is no evidence that Plaintiff informed Walton, as opposed to other Defendants. In the materials submitted, Plaintiff asserts that he informed prison officials at his September 26, 2016 board hearing of "his denial of medical treatment for his infection," after which Lowther directed that he "be seen." ECF Nos. 176-1 ¶ 21; 176 ¶ 22. Although the hearing record reflects that Defendant Schwartz was present at this hearing, there is no evidence to suggest that Walton was in attendance. ECF No. 175-7. Moreover, Plaintiff's argument that Defendants directed he "be seen" by medical professionals counters his claim of deliberate indifference.

20

In addition, the medical records and request slip suggest that Plaintiff did not submit a request for treatment to the medical department, as required in the Prison Handbook, until September 23, 2016. Bickerton evaluated Plaintiff the next business day. Widmar's notes further indicate that Plaintiff had already been evaluated "several times" in connection with his purported infection by a physician assistant and a nurse prior to Widmar's additional examination on October 4, 2016. Plaintiff has not made the requisite showing of the essential elements of deliberate indifference claim for the alleged denial of toenail infection care. As such, summary judgment is warranted as to Count II, as it relates to the remaining Defendant, Walton.

### 2. Denial of psychological care (Count III)

In their Motion for Summary Judgment as to Plaintiff's Eighth Amendment claim for denial of psychological care, Defendants argue that Plaintiff also fails to establish a "serious medical need" with respect to his mental health condition. ECF No. 162 at 7. Defendants contend that this claim rests on vague allegations that Plaintiff suffered from a "deterioration of mental health" without identifying a supporting diagnosis, any specific requests for treatment for a psychological condition, or any explanation as to how Defendants' actions caused Plaintiff's health to deteriorate. Id. Plaintiff counters by relying on records demonstrating a pre-existing diagnosis of "other specified schizophrenia and other psychotic" mental health conditions which, he argues, demonstrate that he had a "serious medical need." ECF No. 175-18. Plaintiff further argues that there are "systematic deficiencies" at Westmoreland County Prison, because he was not seen by a psychiatrist or psychologist while Plaintiff was in the RHU and claims he was told the doctor was on vacation at the time.

With respect to Plaintiff's previously diagnosed mental illness, however, the record does not support Plaintiff's claim that he was "denied psychological care." See ECF No. 59 at 4. To

the contrary, the records show that Plaintiff received ongoing psychiatric treatment in connection with his mental health while incarcerated, including medication for the treatment of his condition (as Plaintiff acknowledges in the Second Amended Complaint) and visits with mental health professionals. ECF No. 175-14. At most, then, Plaintiff is suggesting that the quantity or quality of his mental health care was insufficient.

Where, as here, an inmate is under the care of a medical professional, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill, 372 F.3d at 236.

Plaintiff proffers no evidence to support such a finding. There is no evidence produced from which a jury could reasonably conclude that Plaintiff was mistreated, let alone that the remaining Defendant as to Count III, Walton—the Warden, with whom Plaintiff has not claimed any direct interaction—was aware of, yet disregarded Plaintiff's psychiatric need. Plaintiff argues that he needed to see a doctor while in the RHU so that his medication could be adjusted, ECF No. 177 at 24, but Plaintiff proffers no evidence to support the medical necessity or even propriety of doing so. Finally, Plaintiff's assertion that a single psychiatrist, "John D.," went on vacation while Plaintiff was in the RHU (but had regularly attended to him in the past) does not establish persistent "systemic deficiencies" of which Plaintiff claims Walton was aware. Therefore, Plaintiff has not made the requisite showing of the essential elements of a deliberate indifference claim for the alleged denial of psychological care. As such, summary judgment is granted with respect to Count III, as it relates to the remaining Defendant, Walton.

## D.    Conditions of Confinement Claim (Count I)

Plaintiff also asserts an Eighth Amendment claim[7] with respect to the conditions of his confinement during the month that he was assigned to the RHU. He asserts this claim against Defendants Walton, Tomasello, Schwartz, and the Prison Board. ECF No. 59 at 3. Plaintiff claims that the conditions in the RHU (including isolation and lack of access to showers, recreation, and clean linens) caused his mental health to deteriorate, and alleges that Defendants knew that the conditions of Plaintiff's confinement could cause worsening mental health problems for him, considering his mental health vulnerabilities. Id. He also claims that the conditions caused him to suffer physical symptoms, including constipation, chest pain and the contraction of a toenail infection. Id.

An Eighth Amendment constitutional violation occurs when two conditions are met. First, there is an objective requirement that the condition "be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." Harris v. Angelina Cty., Texas, 31 F.3d 331, 334 (5th Cir. 1994) (citing Wilson v. Seiter, 501 U.S. 294, 304 (1991)). Second, under a subjective requirement, the Court must determine that

---

[7] Although Plaintiff pleads his claim under the Fifth, Fourteenth, and Eighth Amendments, the parties' briefing relies almost exclusively on the application of the Eighth Amendment. To the extent Plaintiff asserts any other arguments, they are briefly raised with no supporting evidence and argument and/or are not supported by his pleadings. In particular, Plaintiff states that he was denied notice and a meaningful opportunity to be heard and challenge his "prolonged solitary confinement," ECF No. 177 at 14, but such allegations are not pleaded in his Complaint, and they are not supported by any evidence. To the contrary, Plaintiff introduces evidence that he appeared before the disciplinary board twice to assess his confinement in the RHU, and that he informed them of the conditions of his confinement. Plaintiff also claims that he was denied equal protection, ECF No. 177 at 14. To state an equal protection claim, however, Plaintiff must allege "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Wilson v. Taylor, 515 F. Supp. 2d 469, 472 (D. Del. 2007) (internal quotations omitted). Plaintiff does not allege that he was singled out for disparate treatment for any particular reason, and Plaintiff introduces no evidence that would support any such allegations. Finally, Plaintiff claims in his Brief in Opposition that he was subject to "atypical and significant" hardship sufficient to deprive him of a liberty interest, because "both expert and Plaintiff's own testimony creates a triable issue under the Sandin [v. Conner, 512 U.S. 472 (1995)] standard." But Plaintiff produces no deposition testimony or expert testimony in support of his claims. Accordingly, with respect to all claims other than Plaintiff's Eighth Amendment claim, the Court concludes that Plaintiff has failed to state a claim and/or waived his claims by failing to sufficiently brief the issues.

23

the prison official responsible for the deprivation was "deliberately indifferent" to inmate health or safety. Farmer, 511 U.S. at 837.

### 1. Serious deprivation of a basic human need

Here, Defendants argue that summary judgment is appropriate because Plaintiff has failed to introduce any evidence that he has suffered a mental health problem as a result of his confinement in the RHU. ECF No. 162 at 3-4. In addition, Defendants argue that, under the PLRA, Plaintiff cannot bring a claim for mental injury suffered in custody without a prior showing of physical injury. Id. Plaintiff, in response, points to evidence that he suffers from ongoing mental health problems. ECF No. 177 at 3. He further argues that the subjective element is satisfied, because the risks of prolonged isolation and solitary confinement were known to Defendants and are well-documented. Id. at 15-16.

With respect to the objective element, as the Court previously held, Plaintiff's allegations that he was deprived of a shower for eight days, clean linens and uniforms for two weeks, and "recreation" for two weeks, do not, standing alone, give rise to an Eighth Amendment violation. ECF No. 6 at 5-9; see also Barndt v. Wenerowicz, 698 F. App'x 673, 677 (3d Cir. 2017) (denial of outdoor recreation and shower for twenty-eight days not a constitutional violation); Adderly v. Ferrier, 419 F. App'x 135, 140 (3d Cir. 2011) (holding that denial of access to clothing, toiletries, legal mail, a pillow, a mattress, and showers for seven days did not "constitute a denial of the 'minimal civilized measures of life's necessities'") (quoting Williams v. Delo, 49 F.3d 442, 444-47 (8th Cir. 1995)); Harvey v. Shoupe, No. 17-49, 2018 WL 3370674, at *3 (W.D. Pa. June 11, 2018), *report and recommendation adopted*, No. 17-49, 2018 WL 3368736 (W.D. Pa. July 10, 2018) (denial of showers and recreation for sixteen days did not give rise to a constitutional violation); Devon v. Warden SCI Mahoney, No. 08-1448, 2008 WL 3890161 at *4 (M.D. Pa. Aug.

19, 2008) (holding that thirteen days without shower, shave or recreation did not violate the Eighth Amendment); Briggs v. Heidlebaugh, No. 96-3884, 1997 WL 318081, at *2 (E.D. Pa. May 22, 1997) (denial of shower for two weeks not a constitutional violation).

To the extent Plaintiff further argues that Defendants violated his Eighth Amendment rights by placing him in solitary confinement, "it is undisputed that a prisoner's placement in solitary confinement does not, in itself, violate the Constitution" and isolation "may be a necessary tool of prison discipline." Johnson v. Wetzel, 209 F. Supp. 3d 766, 777, 780 (M.D. Pa. 2016) (citing Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), *superseded on other grounds by statute*, Prison Litigation Reform Act, 42 U.S.C. § 1997, et seq.). In assessing whether solitary confinement violates the Eighth Amendment, courts must look to the "duration and conditions of segregated confinement" and the "touchstone is the health of the inmate." Young, 960 F.2d at 364.

Here, there is no record evidence to establish that Plaintiff was kept in solitary confinement for any significant period of time. While the record is unclear as to whether and how long Plaintiff was subject to solitary confinement, it is clear that Plaintiff was in the RHU for less than 30 days and that he had a cellmate for at least some portion of this time. Taking all inferences in favor of Plaintiff, then, any such confinement lasted, at most, four weeks.

Moreover, although Plaintiff claims that such conditions had a deleterious effect on his health, he has produced no evidence from which a jury could reach this conclusion. The medical records produced, which relate to medical conditions that occurred months or years after Plaintiff's confinement in the RHU, do not opine as to the cause of Plaintiff's symptoms. And, in at least one instance, the records appear to contradict Plaintiff's claims as to the source of his injury. With respect to his alleged decreased eyesight, the medical records indicate that Plaintiff needed glasses

prior to his confinement in the RHU. ECF No. 175-19.[8] Accordingly, Plaintiff fails to meet the first element of his claim.[9]

## 2. Deliberate indifference to inmate safety or health

The evidence is also insufficient for a jury to find in Plaintiff's favor with respect to the subjective element. Plaintiff relies on evidence that he suffered from a mental illness, and that Defendants generally were aware of the risks of long-term solitary confinement. Plaintiff does not, however, introduce evidence to establish either (1) that Plaintiff's mental illness made him particularly susceptible to risk from the conditions of his confinement, and that Defendants were aware of (yet disregarded) that risk; or (2) that Plaintiff was confined to long-term isolation known to create a substantial risk.

In Palakovic v Wetzel, for example, the decedent's estate brought an Eighth Amendment claim after decedent repeatedly had been placed in solitary confinement, which was the prison's alleged "practice for dealing with mentally ill prisoners." Palakovic v. Wetzel, 854 F.3d 209, 216-217 (3d Cir. 2017). As a result, over the course of thirteen months, the decedent repeatedly was subjected to 30-day periods of solitary confinement, "characterized by extreme deprivations of social interaction and environmental stimulation, abusive staff, and inadequate to non-existent mental health care." Id. Decedent committed suicide while in solitary confinement. Id. at 217.

---

[8] The Court also notes that, as shown in records produced in opposition to Plaintiff's previous Motion for Preliminary Injunction in this action, Plaintiff submitted an "Inmate Request Slip" dated November 7, 2017, approximately 13 months after the incident at issue, noting that he has "been having stomach & digestive problems for a few years . . . ." ECF No. 98-1 at 1.

[9] In its Report and Recommendation on Defendants' Motions to Dismiss, the Court previously declined to address Plaintiff's allegations of "constant illumination," because Plaintiff made no factual allegations to support this part of the claim. Plaintiff does not elaborate on this claim in the record at this summary judgment stage. The Court notes, however, that courts have held that twenty-four hour lighting in the RHU is a published regulation of the DOC for security purposes, and have not found this to be *per se* unconstitutional absent indication of excessive light and harm requiring medical attention. See Stewart v. Beard, 417 F. App'x 117, 119-20 (3d Cir. 2011). Here, there is no such evidence presented, and any such claim lacks merit.

26

Plaintiffs alleged that, among other things, defendants were aware of decedent's prior attempts to commit suicide and instances of self-harm, and were also aware that the conditions of solitary confinement generated the majority of suicides, suicide attempts, and acts of self-harm. The Third Circuit held that these allegations were sufficient to state a claim.

Thus, in Palakovic, defendants allegedly knew of the decedent's particular propensity for self-harm, and of the increased likelihood that decedent would (and later did) commit suicide in solitary confinement. Yet they repeatedly placed him in solitary confinement over a period of thirteen months.

In the instant case, by contrast, there is no evidence that a one-month placement in the RHU exposed Plaintiff to a particular risk because of his illness. To the contrary, Plaintiff argues that he was confined to the RHU on numerous occasions in the past, yet does not allege any prior injury as a result. ECF No. 177 at 24. And, while Plaintiff cites to cases finding a risk of harm arising out of prolonged isolation of years or decades, he does not introduce any evidence implicating well-known risks with respect to the, at most, period of weeks at issue here. See ECF No. 177 at 15 (citing Wilkerson v. Stadler, 639 F. Supp. 2d 654 (M.D. La. 2010) (denying summary judgment for Eighth Amendment claims arising out of plaintiffs' 35-year solitary confinement, where plaintiffs produced medical expert opinion of the deleterious health effects caused by their confinement); and Shoatz v. Wetzel, No. 2:13-cv-0657, 2016 WL 595337 (W.D. Pa. Feb. 12, 2016) (denying summary judgment with respect to claim arising out of solitary confinement for over 22 years, where expert opined on the mental health harms to plaintiff caused by this prolonged isolation)). Accordingly, construing all of the evidence in the light most favorable to Plaintiff, there is insufficient evidence as to Plaintiff's conditions of confinement claim. Therefore, summary judgment will be entered as to Count I.

### E. Access to Courts Claim (Count IV)

Finally, Defendants move for summary judgment as to Plaintiff's access to courts claim. In his Second Amended Complaint, Plaintiff alleges that Defendants Westmoreland County Prison, the Prison Board, Cmar, Walton, and Lowther violated his rights to due process and denied his access to courts by (1) obstructing his ability to utilize the internal grievance process; and (2) limiting his access to legal materials, and the law library while he was housed in the RHU. ECF No. 50 at 5. As a result of his limited access to legal materials, Plaintiff claims he was hindered in his ability to prepare for an omnibus pretrial motion hearing scheduled in his criminal case on October 26, 2016.[10]

First, with respect to Defendants' purported hindrance of Plaintiff's ability to file a grievance, this does not give rise to a Constitutional violation. "Prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights." Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997); see also Stroman v. Wetzel, No. 1:16-cv-2543, 2019 WL 931653, at \*7 (M.D. Pa. Feb. 26, 2019) (noting that "inmates do not have a constitutional right to a grievance procedure").

Second, to the extent Plaintiff claims that he was denied access to courts due to restrictions on his ability to access legal materials in the RHU, this claim also lacks merit. At the outset, the Court notes that Plaintiff was released from the RHU on October 5, 2016 and the hearing on the omnibus pretrial motion did not take place until October 24, 2016. The Court takes judicial notice of the dockets of the Court of Common Pleas of Westmoreland County in the criminal case

---

[10] Although Defendant relies solely on Plaintiff's purported failure to exhaust as grounds for dismissing Count IV and does not brief the merits of this claim, under the PLRA, the Court has authority to dismiss claims that fail to state a claim upon which relief may be granted. See 28 U.S.C. §§ 1915A and 1915(e); 42 U.S.C. § 1997(e). The Court is entitled to take judicial notice of public records in considering dismissal on the pleadings. See Dinicola v. DiPaolo, 945 F. Supp. 848, 854 n. 2 (W.D. Pa. 1996).

Plaintiff refers to in his Complaint. <u>Commonwealth v. Stanford</u>, No. CP-65-CR-0003058-2015 (C.P. Westmoreland Cty.) (attached hereto as Appendix A). Those dockets reveal that Plaintiff was appointed counsel to represent him in his criminal case, and he was represented at his trial, for post-sentence motions, and in connection with post-trial appeals challenging his sentence.

"[T]he settled rule is that where the state offers counsel to a criminal defendant, the criminal defendant's right of access to the courts is satisfied as a matter of law." <u>Annis v. Fayette Cty Jail</u>, No. 07-1628, 2008 WL 763735, at *1 (W.D. Pa. March 20, 2008); <u>Diaz v. Holder</u>, 532 F. App'x 61, 63 (3d Cir. 2013) ("[A]n adequate prison law library is but one of many acceptable ways to satisfy [plaintiff's] access [to] the courts . . . . The right can be satisfied, instead, by appointing [plaintiff] an attorney.").

To the extent Plaintiff was not represented by counsel for the omnibus pretrial motion hearing he references in his Complaint, this does not alter the outcome. The criminal docket reflects that approximately three months before the hearing at issue, Plaintiff requested to proceed *pro se*, and that his counsel withdrew his representation as a result. Appendix A, at 11-12. Plaintiff's refusal of appointed counsel and choice to proceed *pro se* negates any claim of denial of access to the courts.[11] <u>Annis v. Fayette Cty</u>, No. 07-1628, 2008 WL 763735, at *7 (W.D. Pa. Jan. 28, 2008), *report and recommendation adopted*, No. 07-1628, 2008 WL 763735 (W.D. Pa. March 20, 2008); <u>see also</u> <u>Degrate v. Godwin</u>, 84 F.3d 768, 769 (5th Cir. 1996) ("[H]aving rejected the assistance of court-appointed counsel, [plaintiff] had no constitutional right to access a law

---

[11] The Court takes judicial notice of the fact that the Commonwealth of Pennsylvania routinely appoints counsel for criminal defendants.

library in preparing the *pro se* defense of his criminal trial.").[12] Accordingly, this claim is also dismissed.

## V. CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of Defendants.

### ORDER

AND NOW, this 9th day of October, 2019, upon consideration of the Motions for Summary Judgment filed on behalf of Defendants, ECF Nos. 161 and 163, IT IS HEREBY ORDERED that the Motions are GRANTED, and Counts I, II, III, and IV of Plaintiff's Complaint are DISMISSED.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if any party wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY THE COURT:

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

---

[12] Based on the outcome of Plaintiff's appeal in Commonwealth v. Stanford, No. 789 WDA 2018, 2018 WL 6818622 (Pa. Super. Ct. Dec. 28, 2018), in which the Superior Court of Pennsylvania upheld the judgment of sentence against Plaintiff, it would also appear that any purported failure to provide legal materials did not result in the loss of any non-frivolous claim/defense sufficient to support Plaintiff's claim. See Lewis v. Casey, 518 U.S. 343, 350-53 (1996) (holding that, to establish a cognizable access to courts claim, a prisoner must demonstrate that he has suffered an actual injury to his ability to present a nonfrivolous, arguable claim).

cc:    Orlando Stanford
NU 9901
SCI-Houtzdale
P.O. Box 1000
Houtzdale, PA 16698

All counsel of record by Notice of Electronic Filing